# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**JAMIE DELLAPOLLA,**

      **Plaintiff,**

**v.**

**ROCCO GUIDICIPIETRO,**

      **Defendant.**

**Civil Action No.**
**23-cv-10739-VEC**

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.    INTRODUCTION ................................................................1

II.   FACTUAL BACKGROUND .....................................................4

III.  DISCUSSION ...................................................................9

    A.    Plaintiff's Complaint Fails to Allege Sufficient Facts to
        Establish Federal Subject Matter Jurisdiction.......................................9

    B.    Plaintiff's Complaint Fails to State a Claim for Relief Because
        the Claims for Declaratory and Injunctive Relief Lack Merit ............12

        1.    Plaintiff's claims lack merit because the FINRA
                Arbitration Submission Agreement Plaintiff signed and
                filed constitutes a valid, binding agreement to submit
                to arbitration ...........................................................................13

        2.    Plaintiff's claims lack merit because Plaintiff agreed to
                arbitrate all disputes with Mr. Guidicipietro...........................15

        3.    Plaintiff's claims lack merit because he waived his right to
                object to arbitration by participating in the arbitration
                proceeding without making a timely objection trial
                demand .................................................................................17

        4.    Plaintiff's claims for declaratory and injunctive relief lack merit
                because the arbitration provision of the customer agreement
                delegates the question of arbitrability to the FINRA arbitration
                panel ....................................................................................18

        5.    Plaintiff's claims lack merit because broad-form
                arbitration agreements are enforceable ...................................23

IV.   CONCLUSION .............................................................24

## TABLE OF AUTHORITIES

**Cases**

*Alliance Bernstein Inv. Research and Mgmt., Inc. v. Schaffran*,
445 F.3d 121, 127 (2d Cir. 2006) .........................................................................21

*Am. Std., Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717-718
(S.D.N.Y. 2007) .....................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................................12

*Bayme v. Groupargent Sec., LLC*, 2011 U.S. Dist. LEXIS 79296, at *10-12
(S.D.N.Y. July 18, 2011) .......................................................................................14

*Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975)............10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)...........................................12

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 898 (2d Cir. 2015).......20

*Cell v. Moore & Schley Sec. Corp.*, 449 N.W.2d 144, 146 (Minn. 1989)...............23

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).......................13

*Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).............22

*Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) ...........................................9

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)...............12

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ...........................................12

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
756 F.3d 1098, 1100 (8th Cir. 2014) ....................................................................21

*Ericsson GE Mobile Communications, Inc. v. Motorola Communications
& Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997).........................................11

*Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009) ...........................22

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942-944, 946 (1995) ......14

*Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149
(3d Cir. 2015)........................................................................................................18

ii

*Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639-40
(S.D.N.Y. 1990) ................................................................................................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529
(2019) ............................................................................................... 19, 20, 23

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002) .......................19

*In re Roman Cath. Diocese of Rockville Ctr.*, 652 B.R. 16, 29-30
(Bankr. S.D.N.Y. 2023) ....................................................................................13

*John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001)...................19

*Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 331 (S.D.N.Y. 2015)......13

*Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 156
(D. Conn. 2016) ................................................................................................10

*Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019)............. 19, 21, 22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 626 (1985) ..................................................................................19

*Morrison v. Allstate Indemnity Comp.*, 228 F.3d 1255, 1268-69
(11th Cir. 2000) .................................................................................................11

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983) ..............................................................................................19

*Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 351-52 (Minn. 2003) .......................24

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) ............ 21, 22

*Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873-75 (8th Cir. 2018)...................23

*Rafferty v. Xinhau Finance Ltd.*, 11 Civ. 133 (CM),
2011 U.S. Dist. LEXIS 9628, 2011 WL 335312, at *5
(S.D.N.Y. Jan. 31, 2011)...................................................................................15

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)....................... 19, 20

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) .........................12

*Safra Sec., LLC v. Gonzalez*, 764 F. App'x 125, 126 (2d Cir. 2019).....................14

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 508, 519-20 (1974)...........................24

*Shaw Group, Inc. v. Triplefine International Corp.*, 322 F.3d 115
(2nd Cir., 2003) ...................................................................... 19, 20, 22

*Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013)..................18

*Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 26-27
(2d Cir. 1996)..........................................................................16

*St. Paul Fire & Marine Ins. Co. v. API, Inc.*, No. A04-204, 2004 Minn. App.
LEXIS 1107, at *10-11 (Ct. App. Sep. 28, 2004) ................................17

*Turban v. Bar Giacosa Corp.*, 2019 U.S. Dist. LEXIS 128832,
2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019)..............................10

*Ulmer v. StreetTeam Software, LLC*, 2023 U.S. Dist. LEXIS 33435, *2-6
(E.D.N.Y. Feb. 28, 2023)..........................................................10

*Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)..............24

*United Steelworkers of Am. v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789
(8th Cir. 2005)..........................................................................24

*Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 476
(1989) ....................................................................................23

*Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396-98
(2d Cir. 2018)..........................................................................22

*Wood v. Maguire Auto. LLC*, 2011 U.S. Dist. LEXIS 109293, at *2
(N.D.N.Y. Sept. 26, 2011) *aff'd*, 508 F. App'x 65, 65-66 (2d Cir. 2013).... 10, 11

*Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017).......................24

## I.    INTRODUCTION

Plaintiff Jamie DellaPolla brought this action to challenge the applicability and enforceability of an arbitration agreement and to enjoin a pending arbitration in which he has actively participated for months without objection prior to filing his Complaint with this Court. Three days before he filed this Complaint, Plaintiff executed and filed a FINRA Arbitration Submission Agreement consenting to the arbitration he asks this Court to enjoin:

**FINRA ARBITRATION Submission Agreement**

_____
In the Matter of the Arbitration Between

     Name(s) of Claimant(s)

Rocco Guidicipietro

                                                23-02187

     Name(s) of Respondent(s)

Jamie DellaPolla
_____

1.  The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2.  The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3.  The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of FINRA Dispute Resolution Services or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4.  The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.  The parties hereto have signed and acknowledged the foregoing Submission Agreement.

_/s/ Jamie DellaPolla_                         12/5/2023
_____
Jamie DellaPolla                          Date
State Capacity if other than individual (e.g., executor, trustee, corporate officer)

LC43A: SUBMISSION AGREEMENT
idr: 08/18/2021

RECIPIENTS:
William Igbokwe, Esq., Jamie DellaPolla
Igbokwe, PLLC d/b/a, Law Office of William Igbokwe, 28 Liberty Street, 6th Floor, New York, NY
         10005

1

In July 2018, Mr. DellaPolla opened two brokerage accounts with Alexander Capital, L.P. ("ACLP"), an independent broker-dealer registered with the Financial Industry Regulatory Authority ("FINRA"). Upon opening his accounts, Mr. DellaPolla completed new account forms prepared by ACLP's clearing firm, RBC Capital Markets, that contain an arbitration provision. By signing the new account forms, Mr. DellaPolla agreed to resolve all disputes, to include those with Rocco Guidicipietro, the registered representative who handled Mr. DellaPolla's accounts at ACLP, via arbitration before a FINRA panel of arbitrators. The arbitration agreement expressly and unequivocally applies to "all controversies that may arise" between Mr. DellaPolla and his "introducing broker" (which is ACLP) and any of the introducing broker's "employees or agents" (which includes Mr. Guidicipietro). (Compl. ¶ 10; Ex. B to Compl., Doc. 1-2 at 7.)

Five years later, Mr. DellaPolla, acting through his lawyer, sent a demand letter[1] to ACLP and Mr. Guidicipietro demanding $2,000,000 to "release" frivolous claims that he threatened to file in court rather than in arbitration as required by his binding arbitration agreement. (*See* Doc. 1-1 at 2.) Attached to the demand letter was a document purporting to be a draft complaint against Mr. Guidicipietro and ACLP, among others. Essentially, Mr. DellaPolla alleged that Mr. Guidicipietro and ACLP participated in a scheme with other third-parties to defraud Mr. DellaPolla in connection with the solicitation of investments into private companies ACLP was taking public. The DellaPolla draft complaint contained several false and defamatory allegations against Mr. Guidicipietro. Mr. Guidicipietro denies any involvement in the alleged fraudulent investments. Mr. DellaPolla knew that these false allegations would result in a disclosure on Mr. Guidicipietro's

---

[1] Mr. DellaPolla attached a copy of Mr. Guidicipietro's Statement of Claim ("SOC") filed in the FINRA arbitration as an exhibit to his Complaint filed in this action. He omitted the exhibits to the SOC, which included the demand letter and draft complaint. Should it please the Court, Defendant will provide these documents to the Court under seal or for an in camera review.

securities license, and Mr. DellaPolla also knew that such a disclosure would be public and would harm Mr. Guidicipietro's business.  (*See id. Generally.*)

Mr. Guidicipietro, in accordance with FINRA's rules, reported Mr. DellaPolla's false accusations to the Central Registration Depository ("CRD"). (*Id.* at 4.) FINRA requires such a disclosure regardless of the truth of the allegations. Consequently, Mr. Guidicipietro's BrokerCheck® Report (which is publicly available online at https://brokercheck.finra.org/individual/summary/2489732) contains a disclosure that is based on false accusations. (*See* Exhibit 1 to Mot., a true and accurate copy of Mr. Guidicipietro's BrokerCheck® Report.) As Mr. DellaPolla has refused to retract his defamatory accusations, Mr. Guidicipietro was forced to file a request for expungement (along with a defamation claim) through arbitration with FINRA. (*See* Doc. 1-1.)

After Mr. Guidicipietro filed his Statement of Claim with FINRA on August 7, 2023, Plaintiff actively participated in the FINRA arbitration for months before seeking to enjoin the arbitration by filing the Complaint in this Court on December 8, 2023. Among other things, during the arbitration proceeding, Plaintiff (1) requested a transfer of venue for the arbitration (from Florida to New York) without raising any objection as to arbitrability, (2) filed an Answer and Counterclaims in the arbitration proceeding without raising any objection as to arbitrability, (3) signed and filed a FINRA Arbitration Submission Agreement to "submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure," and (4) paid the required FINRA filing fees for his counterclaims. Plaintiff continued to do so even after filing this Complaint, when

he confirmed his acceptance of the FINRA arbitration panel during the initial prehearing conference on December 19, 2023.

Plaintiff's claims for declaratory and injunctive relief — based on the assertion that the arbitration agreement does not cover Mr. Guidicipietro's claims for expungement and defamation and is overly broad and unenforceable — are meritless.  These claims are meritless because (1) Plaintiff agreed to arbitrate this dispute when he signed the customer agreements in July 2018 and again when he signed the FINRA Arbitration Submission Agreement on December 5, 2023; (2) the parties' disputes fall within the scope of the arbitration provision; (3) Plaintiff waived his objections to arbitrability by actively participating in the FINRA arbitration without objection for months; (4) the agreement delegates the question of arbitrability to the FINRA arbitrators; and (5) the broad-form arbitration agreement is enforceable.

For these reasons, and as more fully discussed below, Defendant moves for an Order dismissing Plaintiff's Complaint.

## II.    FACTUAL BACKGROUND

Defendant Rocco Guidicipietro is a registered securities broker with over 28 years of experience in the securities industry. (*See* Ex. 1 to Mot., BrokerCheck® Report for Rocco Guidicipietro, available at https://brokercheck.finra.org/individual/summary/2489732.)  He is presently the Chief Operating Officer of ACLP, a registered securities brokerage firm, with whom Plaintiff DellaPolla transacted business. (*See id.; see also Compl.* ¶¶ 8, 11.)

In July 2018, Mr. DellaPolla opened two brokerage accounts with ACLP.[2] (Doc. 1-1 at 5.) The first was opened on or about July 5, 2018, for a SEP IRA (8201) and another one opened on

---

[2] The new account forms completed and executed by Plaintiff were attached as exhibits to the SOC filed by Mr. Guidicipietro in the FINRA arbitration. Mr. DellaPolla attached a copy of the new account form for his individual account as Exhibit A to his Complaint at Doc. 1-2, but he did not include a copy of the new account form for his SEP account.  It is therefore attached as Exhibit 2 to this Motion.

or about July 6, 2018, for an individual account (8200). (*Id.*) In opening each account, Mr.

DellaPolla completed new account forms and agreed in writing to resolve any disputes between

himself and ACLP or ACLP's agents, which includes Mr. Guidicipietro, through arbitration before

FINRA. (*See* Doc. 1-2; *see also* Ex. 2 to Mot.) Each new account form Plaintiff completed

contained a "Client Acknowledgement and Agreement" stating, among other things, that "**I**

**understand that this account is being governed by the predispute arbitration provision in**

**Section 14 of the Customer's Agreement on page 6 of this document.**" (Doc. 1-2 at 4 Ex. 2 to

Mot. at 4) (emphasis in original). The arbitration provision in Section 14 of each Agreement states,

in bold print and all capital letters:

> **I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN ME, MY INTRODUCING BROKER AND / OR RBC CM, OR ANY OF MY INTRODUCING BROKER'S OR RBC CM'S AFFLIATES, EMPLOYEES OR AGENTS, CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN ME, MY INTRODUCING BROKER AND/ OR RBC CM PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE OF MINNESOTA BEFORE AN ARBITRATION PANEL APPOINTED BY THE FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA") AND IN ACCORDANCE WITH THE RULES OF FINRA.**

(Doc. 1-2 at 7; Ex. 2 to Mot. at 7.)

Plaintiff's assent to the arbitration provision is evidenced by his signature alongside the

signature of Mr. Guidicipietro as the registered representative handling his accounts:

5

(Doc. 1-2 at 5; Ex. 2 to Mot. at 5.) Mr. DellaPolla closed his SEP IRA account at ACLP in August of 2022; his individual account remains open, though minimally funded. (*See* Doc. 1-1 at 6.)

Nearly five years later in March 2023, Mr. DellaPolla, acting through his lawyer, sent a demand letter to ACLP and Mr. Guidicipietro demanding $2,000,000 to "release" frivolous claims that he threatened to file in court rather than in arbitration as required by his binding arbitration agreement. (Doc. 1-1 at 2.) In a draft complaint attached to the demand letter, Mr. DellaPolla made numerous false statements, several of which were also defamatory. (*Id.* at 6.) In sum and substance, Mr. DellaPolla falsely asserted that Mr. Guidicipietro worked with and through a third-party, Robert Schwartz[3] in a grand and convoluted scheme to defraud Mr. DellaPolla, Mr. DellaPolla's uncle (Harold Coughlin), and unnamed others. (*See generally id.*) This scheme allegedly involved Mr. Schwartz inducing individuals to invest in private placements through Mr. Schwartz while Mr. Schwartz told those individuals that they were either investing through ACLP or that ACLP was encouraging them to invest with Mr. Schwartz. (*See id. passim.*) Mr. DellaPolla falsely alleged that Mr. Guidicipietro and ACLP allowed and authorized Robert Schwartz to fraudulently act on their behalf with knowledge that Robert Schwartz was not a licensed securities broker. (*Id.*) Mr.

---

[3] Robert Schwartz is the brother of Jerry Schwartz, the owner of JSEC, Inc., an entity that holds a a minority ownership interest in ACLP. (*See* Doc. 1-1 at 6.)

Guidicipietro denies that Mr. Schwartz worked for, on behalf of, or at the instruction of Mr. Guidicipietro or ACLP. (*Id.* at 10-11.)

On April 5, 2023, Mr. Guidicipietro's counsel wrote to Mr. DellaPolla's counsel to inform him that the claims in the Complaint were false and defamatory. (Doc. 1-1 at 3.) Through counsel, Mr. Guidicipietro requested that the false and defamatory statements be withdrawn. (*Id.*) Mr. DellaPolla has refused to withdraw the defamatory and false statements, and has, in fact, continued to make them or others like them. (*Id.* at 3, 11.) Mr. DellaPolla knew that these false allegations would result in a disclosure on Mr. Guidicipietro's securities license, and Mr. DellaPolla also knew that such a disclosure would be public and would harm Mr. Guidicipietro's business. (*Id.* at 2.)

Mr. Guidicipietro, in accordance with FINRA's rules, reported Mr. DellaPolla's false accusations to the Central Registration Depository ("CRD"). (*Id.* at 4.) FINRA requires such a disclosure regardless of the truth of the allegations. (*Id.*) Consequently, Mr. Guidicipietro's BrokerCheck® Report contains a disclosure that is based on false accusations. (*Id.*; *see also* Ex. 2 to Mot.) As a result of these false statements, Mr. Guidicipietro has suffered damage to his reputation, and a loss of business. (Doc. 1-1 at 11.) Mr. DellaPolla's actions forced Mr. Guidicipietro to seek expungement for the false claims that unjustly mar his securities license. (*Id.*)

On August 7, 2023, as required by Plaintiff's Customer Agreements, Mr. Guidicipietro brought his claims for expungement and defamation against Mr. DellaPolla in a FINRA arbitration proceeding. (Compl. ¶ 1; *see also* Doc. 1-1.) Plaintiff actively participated in the arbitration for months before filing his Complaint to enjoin the arbitration. For example, on October 6, 2023, Mr. DellaPolla submitted a written request to FINRA seeking a transfer of venue of the arbitration proceeding from Florida (where it had been assigned) to New York. (*See* Exhibit 3 to Mot., a true and accurate copy of October 6, 2023 Letter to FINRA.) On November 5, 2023, Mr. DellaPolla

filed a Statement of Answer and Counterclaims in FINRA. (*See* Exhibit 4 to Mot., a true and accurate copy of Statement of Answer and Counterclaims.) On December 6, 2023, Mr. DellaPolla paid the required filing fee to FINRA to maintain counterclaims and filed his signed FINRA Arbitration Submission Agreement. (*See* Exhibit 5 to Mot., a true and accurate copy of Proof of Payment; *see also* Exhibit 6 to Mot., a true and accurate copy of signed FINRA Arbitration Submission Agreement.)  After Plaintiff filed his Complaint in this action, his counsel attended an Initial Prehearing Conference with the FINRA arbitration panel on December 19, 2023, and confirmed Mr. DellaPolla's acceptance of the panel's composition. (*See* Exhibit 7 to Mot. at 2, ¶ 5, December 19, 2023, FINRA Initial Prehearing Conference Scheduling Order.)

Plaintiff filed his Complaint in this Court on December 8, 2023. Three days later, on December 11, 2023, Mr. DellaPolla filed a cursory motion with FINRA to stay the arbitration "to allow for a more comprehensive and judicious consideration of the issues involved, preventing potential conflicts or inconsistencies between the two concurrent legal proceedings." (*See* Exhibit 8 to Mot., a true and accurate copy of December 11, 2023 Letter Motion to Stay filed in FINRA Case No. 23-02187.) Plaintiff filed the motion, referencing the Complaint he filed in federal court, without providing Mr. Guidicipietro or the FINRA panel with a copy of the Complaint. After Mr. Guidicipietro filed his opposition to the stay and without a reply from Mr. DellaPolla, the FINRA panel denied Mr. DellaPolla's motion to stay on January 29, 2024, and ordered that the arbitration would proceed. (*See* Exhibit 9 to Mot., Claimant's Opposition to Mot. to Stay; *see also* Exhibit 10 to Mot., FINRA Order denying Motion to Stay.)

## III.    DISCUSSION

Plaintiff's Complaint fails to establish that the jurisdictional requirements have been met to invoke this Court's subject matter jurisdiction under 28 U.S.C. § 1332(c). Plaintiff's bare and

conclusory allegation that the "amount in controversy exceeds $75,000" is not sufficient to establish an amount in controversy of more than $75,000 where the Complaint does not seek any monetary relief and the amount in controversy is measured by the value of the object of the litigation. The Court should therefore dismiss Plaintiff's Complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

The Court should dismiss the complaint with prejudice and not allow Plaintiff to amend the jurisdictional allegations because an amendment would be futile. Plaintiff's Complaint for declaratory and injunctive relief fails to state claim for relief because (1) Plaintiff agreed to arbitrate this dispute when he signed the customer agreements in July 2018 and again when he signed the FINRA Arbitration Submission Agreement on December 5, 2023; (2) the parties' disputes fall within the scope of the arbitration provision; (3) Plaintiff waived his objections to arbitrability by actively participating in the FINRA arbitration without objection for months; (4) the agreement delegates the question of arbitrability to the FINRA arbitrators; and (5) the broad-form arbitration agreement is enforceable.

### A. Plaintiff's Complaint Fails to Allege Sufficient Facts to Establish Federal Subject Matter Jurisdiction.

Where, as here, a plaintiff brings an action in federal court based on diversity jurisdiction, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *See Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) ("The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.") (internal citations omitted). Plaintiff, as the party invoking the court's diversity jurisdiction has "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal citations omitted). The "reasonable probability" burden is not onerous at the pleading stage because "a

rebuttable presumption [exists] that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* at 397 (internal citations omitted). However, "this face-of-the-complaint presumption is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Ulmer v. StreetTeam Software, LLC*, 2023 U.S. Dist. LEXIS 33435, *2-6 (E.D.N.Y. Feb. 28, 2023) (quoting *Wood v. Maguire Auto. LLC*, 2011 U.S. Dist. LEXIS 109293, at *2 (N.D.N.Y. Sept. 26, 2011) *aff'd*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (summary order) (affirming that bare and conclusory allegations as to amount in controversy are "not entitled to a presumption of truth"). As district courts in this Circuit have explained, "the court need not presume that [a] general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy." *Wood*, 2011 U.S. Dist. LEXIS 109293, at *2; *Turban v. Bar Giacosa Corp.*, 2019 U.S. Dist. LEXIS 128832, 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019) (same). Instead, to invoke diversity jurisdiction, a plaintiff must allege facts sufficient to "plausibly show an amount in controversy of more than $75,000." *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 156 (D. Conn. 2016); *Turban*, 2019 U.S. Dist. LEXIS 128832, at *2 (declining to exercise jurisdiction over claims where "allegations [were] insufficiently detailed to render the jurisdictional amount plausible on its face").

        In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *See Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation"); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that the

value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted). Benefits from an injunction must not be "too speculative" or "immeasurable." *Am. Std., Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717-718 (S.D.N.Y. 2007) (citing *Morrison v. Allstate Indemnity Comp.*, 228 F.3d 1255, 1268-69 (11th Cir. 2000) and *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997)).

Here, Plaintiff has failed to allege facts sufficient to establish plausibly that the amount in controversy requirement is met. The Complaint contains only a boilerplate assertion that "the amount in controversy exceeds $75,000, exclusive of interest and costs." (*See* Compl. ¶ 5.) It is plain from the face of the Complaint that Plaintiff has not claimed the jurisdictional minimum of $75,000 (or any specific amount). Indeed, Plaintiff has not asserted any direct monetary claim arising under the agreements between the parties. Nor does he allege that the requested declaratory judgment has monetary value. *Oakfabco, Inc.*, 498 F. Supp. 2d at 718 (remanding declaratory judgment action to state court for lack of subject matter jurisdiction and finding that any judgment in this case will not have preclusive effect in such suits and thus a declaratory judgment in favor of defendant as removing party). Moreover, none of the facts that are alleged in the Complaint plausibly support an amount in controversy in excess of $75,000 or suggest that it is plausible that the value of the object of the litigation would or could exceed that sum. Without more, Plaintiff's boilerplate assertion that the amount in controversy exceeds the jurisdictional threshold is "conclusory and not entitled to a presumption of truth." *See Wood*, 508 F. App'x at 65.

The Court should therefore dismiss Plaintiff's Complaint for failure to sufficiently allege subject matter jurisdiction. Defendant further requests that the Court dismiss the complaint *with prejudice* rather than allowing Plaintiff to amend the jurisdictional allegations because the

substantive claims lack merit such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that an opportunity to replead is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

**B. Plaintiff's Complaint Fails to State a Claim for Relief Because the Claims for Declaratory and Injunctive Relief Lack Merit.**

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept the factual allegations of a complaint as true, this tenet "is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Therefore, the Court is not required to accept as true Plaintiff's conclusory allegations that (i) Defendant Guidicipietro is not a party to the Customer Agreements containing the arbitration provisions, (*see* Compl. ¶ 2); (ii) Defendant Guidicipietro's expungement and defamation claims alleged in the FINRA arbitration proceeding do not arise in connection with the Customer Agreements, (*see id.* ¶¶ *18-19*); and (iii) the arbitration agreement is unenforceable as it pertains to the controversy between Plaintiff and Defendant, (*id.* ¶¶ 4, 20.)

A complaint may be dismissed when the facts alleged are legally insufficient to support the relief sought. *Twombly*, 550 U.S. at 558 (holding that a complaint is properly dismissed where "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief"); *In*

*re Roman Cath. Diocese of Rockville Ctr.*, 652 B.R. 16, 29-30 (Bankr. S.D.N.Y. 2023). Plaintiff has failed to plead facts that provide a basis for the declaratory and injunctive relief sought for the reasons asserted more fully below.

On a motion to dismiss under Rule 12(b)(6), the court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotation marks and citations omitted). For example, when a legal document is presented in support of a motion to dismiss and the complaint is "replete with references" to the document, the court may consider the document as integral to the complaint. *See Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 331 (S.D.N.Y. 2015) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). The pending FINRA arbitration is the object of Plaintiff's claims. Therefore, the Court may properly consider the parties' filings in the arbitration and the Orders issued by the FINRA panel attached as exhibits to Defendant's Motion to Dismiss.

> 1. *Plaintiff's claims lack merit because the FINRA Arbitration Submission Agreement Plaintiff signed and filed constitutes a valid, binding agreement to submit to arbitration.*

Plaintiff filed the instant action seeking enjoinment of the pending arbitration and a declaration that he had no obligation to arbitrate Defendant's claims. (*See* Compl. ¶¶ 15-22.) However, just three days before he filed his Complaint in this Court Plaintiff signed a FINRA Arbitration Submission Agreement on December 5, 2023 (filed with FINRA on December 6, 2023) and explicitly agreed to arbitrate the underlying claims. By signing the FINRA Arbitration Submission Agreement, Plaintiff agreed to the following:

- To submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure;
- To be bound by FINRA's rules and procedures relating to arbitration; and
- To abide by and perform any award(s) rendered pursuant to this Submission Agreement.

(Ex. 6 to Mot.) Plaintiff's request to enjoin the pending FINRA arbitration must necessarily fail because the FINRA Arbitration Submission Agreement signed and filed by Plaintiff constitutes a valid, binding agreement to submit all issues, including the threshold issue of arbitrability, to the FINRA arbitration panel. *Safra Sec., LLC v. Gonzalez*, 764 F. App'x 125, 126 (2d Cir. 2019) (affirming dismissal of a complaint seeking to enjoin a pending arbitration because the submission agreement plaintiff signed constituted a clear and unqualified agreement to arbitrate); *First Montauk Sec. Corp. v. Menter*, 26 F. Supp. 2d 688, 689 (S.D.N.Y. 1998) (finding that the Uniform Submission Agreement filed by plaintiff constitutes a valid, binding agreement to submit the question of arbitrability to the NASD arbitration panel, denying plaintiff's motion for a preliminary injunction staying arbitration, and dismissing complaint seeking injunctive and declaratory relief). It is well-settled that an unqualified, formal agreement to "submit the present matter in controversy . . . to arbitration," is "clear and unmistakable evidence," of the parties' agreement that all disputed issues including arbitrability are being submitted to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942-944, 946 (1995) ("[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute . . . But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value."); *Bayme v. Groupargent Sec., LLC*, 2011 U.S. Dist. LEXIS 79296, at *10-12 (S.D.N.Y. July 18, 2011) (finding that language in an arbitration submission agreement, which encompasses essentially any and all claims that the parties could bring, is substantially similar to an agreement

14

that requires "any and all" disputes to be submitted to the arbitrator, which has been held to evidence clear and unmistakable intent to submit the arbitrability question to arbitration) (citing *Rafferty v. Xinhau Finance Ltd.*, 11 Civ. 133 (CM), 2011 U.S. Dist. LEXIS 9628, 2011 WL 335312, at *5 (S.D.N.Y. Jan. 31, 2011)).

Because Plaintiff agreed to submit the underlying disputes to arbitration before a FINRA panel and in accordance with the FINRA ByLaws, Rules, and Code of Arbitration Procedure, his Complaint must be dismissed.

> 2. *Plaintiff's claims lack merit because Plaintiff agreed to arbitrate all disputes with Mr. Guidicipietro.*

When he opened his investment accounts with ACLP, Plaintiff signed agreements to arbitrate. In doing so, he agreed to resolve all disputes as ACLP's customer, to include those with Defendant Guidicipietro, his registered representative, via arbitration with FINRA. Section 14 of the Customer Agreement signed by Plaintiff and Defendant states:

> **14. ARBITRATION. I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN ME, MY INTRODUCING BROKER AND/OR RBC CM, OR ANY OF MY INTRODUCING BROKER'S OR RBC CM'S AFFILIATES, EMPLOYEES OR AGENTS, CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN ME, MY INTRODUCING BROKER AND/OR RBC CM PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION . . . BEFORE AN ARBITRATION PANEL APPOINTED BY THE FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA") AND IN ACCORDANCE WITH THE RULES OF FINRA.**

(Doc. 1-2 at 7 of 13). Plaintiff's agreement to be bound by the arbitration provision is evidenced by his signature appearing above the signature of Defendant Guidicipietro:

(*Id.* at 5; *see also* Ex. 1 to Mot. at 5.)

The arbitration agreement expressly and unequivocally applies to "all controversies that may arise" between Mr. DellaPolla and his "introducing broker" (which is ACLP) and any of the introducing broker's "employees or agents" (which includes Mr. Guidicipietro) "concerning any transaction." (Compl. ¶ 10; Ex. B to Compl., Doc. 1-2 at 7.) While the Complaint alleges that the arbitration agreement "is between Plaintiff and RBC Capital Markets, who is not a party to the arbitration," RBC is the clearing firm for ACLP (the broker-dealer with whom Mr. Guidicipietro was (and is) registered). Mr. Guidicipietro was the registered representative who handled Mr. DellaPolla's accounts at ACLP and signed the arbitration agreement as ACLP's agent.

To the extent Plaintiff challenges Mr. Guidicipietro's standing to arbitrate his claims against Plaintiff, that is an issue for the arbitrator. (*See* Doc. 1-2 at 7) (agreeing to arbitrate controversies concerning the construction of the agreement). Mr. Guidicipietro, as an agent of the introducing broker and signatory to the Agreement, is bound by and entitled to enforce the arbitration provision as an intended beneficiary under the express terms of the contract. *See Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 26-27 (2d Cir. 1996) (finding third-party beneficiary status from language providing that "any controversy between a member . . . and any other person arising out of the business of such member . . . shall at the insistence of any such

16

party be submitted for arbitration"); *St. Paul Fire & Marine Ins. Co. v. API, Inc.*, No. A04-204, 2004 Minn. App. LEXIS 1107, at *10-11 (Ct. App. Sep. 28, 2004) ("A nonsignatory third-party beneficiary to a contract may, in some circumstances, enforce an arbitration clause, 'if the contracting parties intended the third party to directly benefit from the contract.'"); *see also Citadel Servicing Corp.*, 431 F. Supp. 3d at 286-87 ("Whether Castle is an 'agent' of StoneCastle within the meaning of the Placement Agreement (and therefore entitled to arbitrate against Citadel) is precisely a 'related matter' that 'shall be determined by [FINRA] arbitration.'").

Because Plaintiff expressly agreed to arbitrate all disputes with Mr. Guidicipietro, Plaintiff's Complaint must be dismissed.

> 3. *Plaintiff's claims lack merit because he waived his right to object to arbitration by participating in the arbitration proceeding without making a timely objection.*

Before and after filing his Complaint in this Court, Plaintiff actively participated in the FINRA arbitration, waiving any argument that the underlying claims are not arbitrable or that the FINRA arbitration panel lacks the authority to arbitrate the parties' dispute. Plaintiff waived his right to contest arbitration by waiting so long to object to the arbitration, by, among other things, filing a Statement of Answer *and* Counterclaims in the arbitral forum, and by selecting and confirming a panel of arbitrators.  In his Statement of Answer and Counterclaims, filed with FINRA on November 5, 2023, Plaintiff did not state any objection to proceeding in arbitration nor did he raise any issues concerning arbitrability as a defense or otherwise. (*See* Ex. 4 to Mot. Respondent's Statement of Answer and Counterclaims at 13-14 (asserting Affirmative Defenses)). On the contrary, Mr. DellaPolla presented his account of alleged facts, complained about alleged investments, and specifically accused Mr. Guidicipietro of misconduct as a registered representative. (*Id.* at 6-7.) Plaintiff's contention that because Mr. Guidicipietro has denied the merits of Plaintiff's accusations the arbitration provision is no longer applicable is nonsensical. He

17

also asserted counterclaims and requested relief from the FINRA Panel, to include actual or compensatory damages. (*Id.* at 14-18.) These voluntarily submitted counterclaims encompassed the disputes with Mr. Guidicipietro that Plaintiff asserts in this action are not arbitrable.

Plaintiff's conduct in the arbitration demonstrates his acquiescence to the FINRA panel's authority over the claims. Courts have repeatedly held that a party, through its conduct, may waive its right to object to going forward with an arbitration even if not contractually bound to do so (which is not the case here). "Where a party participates in an arbitration hearing without voicing objection to the arbitrator's authority to decide the matter, the party waives its right to challenge the arbitrator's jurisdiction." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013) (cleaned up). "Because arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object[.]" *Id.* (citation and alteration omitted)). The waiver rule also serves the interests of efficiency and finality, as it prevents parties from sitting on their rights during arbitration and then getting a second chance from the courts should they lose. *See Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149 (3d Cir. 2015); *see also Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639-40 (S.D.N.Y. 1990) (finding waiver where a party participated in the proceedings, lest the party could "participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration").

> ### 4. Plaintiff's claims for declaratory and injunctive relief lack merit because the arbitration provision of the customer agreement delegates the question of arbitrability to the FINRA arbitration panel.

The terms of the arbitration agreements — that "all controversies that may arise … concerning any transaction(s), or the construction, performance, or breach of this or any other agreement … shall be determined by arbitration" — clearly and unmistakably evidence the

parties' agreement to have the issue of arbitrability resolved by a FINRA arbitration panel. (Compl. ¶ 10; Doc. 1-2 at 7.)

The United States Supreme Court has repeatedly recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002). Federal courts are generally obliged to refrain from interfering with the authority assigned to arbitrators by parties to arbitration agreements. *See generally Howsam*, 537 U.S. 79 (2002); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983); *Shaw Group, Inc. v. Triplefine International Corp.*, 322 F.3d 115 (2nd Cir., 2003). Moreover, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001). Here, there is no doubt.

Plaintiff's claims ignore decisions of the Supreme Court and Federal Circuit Courts of Appeals holding that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("We have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019) ("Regardless of their reasons (and even in the absence of reasons), parties are free to enter into a binding contract by which either party can

compel the other to have every aspect of a future dispute between them, including its arbitrability, determined by arbitrators."). There is no question under well-settled governing law that the arbitration agreement clearly and unmistakably delegated the gateway issue of arbitrability to the FINRA arbitrators. *Henry Schein,* 139 S. Ct. at 530.

First, the agreement's broad language agreeing to arbitrate all aspects of all disputes provides clear and unmistakable evidence of an intent that the arbitrator decide issues of arbitrability. Here, the arbitration provision manifests the signatories' intent that a FINRA arbitration panel, rather than a court, is to decide whether the arbitration provision is enforceable. This intent is evidenced by the broad scope of the arbitration provision, which states that "all controversies that may arise between me, my introducing broker, and/or RBC CM, or any of my introducing broker's or RBC CM's affiliates, employees, or agents concerning any transaction(s), or the construction, performance, or breach of this or any other agreement between me, my introducing broker, and/or RBC CM pertaining to securities and other property . . . . shall be determined by arbitration." (Compl. ¶ 10.)   The arbitration provision's referral of "all controversies," including those concerning the "construction" of the agreement to arbitration generally reflects a broad grant of power to the arbitrators to assess arbitrability. *See Rent-A-Center*, 561 U.S. at 66, 69 (finding that an arbitration agreement giving the arbitrators "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this contract" empowered the arbitrators to resolve arbitrability of an unconscionability claim); *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 898 (2d Cir. 2015) (finding agreement that required arbitration of "any and all" disputes between the parties relating to their agreement to constitute clear and unmistakable evidence of parties' intent for arbitrator to decide arbitrability); *Shaw Group*, 322 F.3d at 121 ("[E]ven absent an express

contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) (finding that a contractual provision that "any and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement ... shall be determined by arbitration" evidenced "the parties' intent to arbitrate all issues, including arbitrability.").

Second, the Customer Agreement explicitly incorporates the FINRA Rules. The arbitration provision states that "any arbitration under this Agreement shall be conducted . . . in accordance with the Rules of FINRA." (Doc. 1-2 at 7.) As relevant here, FINRA Rule 12409 provides, "The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." Thus, the FINRA Rules empower an arbitrator to decide issues of arbitrability. *See Alliance Bernstein Inv. Research and Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006) (holding that NASD Rule 10324, which is substantially identical to FINRA Rule 12409,[4] evidenced a clear and unmistakable intention in an arbitration agreement that incorporated the NASD Code to have the arbitrators decide arbitrability of a question that turned on interpretation of the Code); *see also Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (finding "the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability"). When "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such

---

[4] NASD was a predecessor to FINRA. *See Bucsek*, 919 F.3d at 189 ("the NASD was replaced by FINRA.")

issues to an arbitrator." *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also, e.g., Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) (holding incorporation of UNCITRAL Arbitration Rules, which empower the arbitrator to decide issues of arbitrability, constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Shaw Group*, 322 F.3d at 122 (holding reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator); *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009) ("[A]n arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court.")

Third, language in the agreement waiving the right to seek remedies in court provides clear and unmistakable evidence of an intent to delegate the question of arbitrability to the FINRA arbitration panel. *See Bucsek*, 919 F.3d at 190-192. In signing the Customer Agreement, Plaintiff and Defendant Guidicipietro agreed they would be "giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." (Doc. 1-2 at 6.) Language in a contract waiving the signatories' right to sue each other in court has been routinely found to provide evidence of an intent to delegate arbitrability issues to the arbitrator. *See, e.g., Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396-98 (2d Cir. 2018) (finding "an intent to delegate to an arbitrator any questions of arbitrability," where arbitration clause stated that parties were "giving up the right to sue Wells Fargo Advisors ... in court concerning matters related to or arising from your employment"); *Bybyk*, 81 F.3d at 1199 ("Several provisions in the Agreement evidence the parties' intent to

arbitrate all issues, including arbitration: ... '[T]he parties are waiving their right to seek remedies in court.'")

Thus, the Court does not have the power to determine whether the arbitration agreement governs the parties' dispute. *Henry Schein*, 139 S. Ct. at 529. For these reasons, Plaintiff's assertions that he is entitled to have this Court declare that the underlying dispute is not arbitrable and enjoin Defendant from proceeding with the FINRA arbitration lack any merit and his Complaint must be dismissed.

> 5.  *Plaintiff's claims lack merit because broad-form arbitration agreements are enforceable.*

Plaintiff's claim that "[t]o any extent which the Agreement can be interpreted to encompass an action for expungement and defamation as contained in the SOC, the Agreement would have to be read to encompass every possible dispute between Plaintiff and RBC Capital Markets or any of its affiliates, and is therefore overbroad and unenforceable" is not supported by any existing governing law. The arbitration agreement in this case provides that "any arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the State of Minnesota." (Doc. 1-1 at 7.) The Minnesota Supreme Court has held that questions regarding the enforceability of arbitration agreements and the applicability of arbitration provisions to particular disputes are governed by the FAA. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms" and "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Cell v. Moore & Schley Sec. Corp.*, 449 N.W.2d 144, 146 (Minn. 1989) (quoting *Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989)); *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873-75 (8th Cir. 2018) (holding that where a valid arbitration agreement exists, the court must liberally construe it, "resolving any

doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." There is no question that broad-form arbitration agreements are enforceable under the FAA. *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 351-52 (Minn. 2003) (finding that broad language in an arbitration clause agreeing to arbitrate "any and all" controversies and claims arising out of the agreement is valid and enforceable); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 508, 519-20 (1974) (holding that language in an arbitration clause, "any controversy or claim [that] shall arise out of this agreement," was broad enough to compel arbitration of the plaintiff's claims of fraudulent representations); *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (holding that if an arbitration clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision); *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad. Indeed, "[s]uch a provision constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement containing the clause."); *United Steelworkers of Am. v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789 (8th Cir. 2005) ("[I]f the clause is broad . . . the court analyze[s] whether the dispute relates to the subject matter of the agreement.")

Because arbitration provisions are not per se objectionable simply because they are broad in scope, Plaintiff's claims are clearly not colorable.

## IV.    CONCLUSION

Plaintiff agreed to submit the underlying disputes to FINRA arbitration.  The FINRA Panel denied Plaintiff's belated motion to stay, thus rejecting the assertion that it lacked jurisdiction over

the claims and counterclaims.  Defendant therefore respectfully requests an Order from the Court

dismissing Plaintiff's Complaint.


Respectfully submitted this 8th day of February 2024.


*s/ M. Scott Holcomb*
M. Scott Holcomb
Holly Cole
Holcomb + Ward, LLP
3455 Peachtree Rd NE, Suite 500
Atlanta, GA 30326
scott@holcombward.com
holly@holcombward.com
(404) 445-5205

25