# Exhibit 9

# Motion to Dismiss

**BEFORE FINRA DISPUTE RESOLUTION SERVICES**

| | | |
|---|---|---|
| **ROCCO GUIDICIPIETRO,** | ) | |
| | ) | |
| **CLAIMANT,** | ) | |
| | ) | **FINRA No. 23-02187** |
| **V.** | ) | |
| | ) | |
| **JAMIE DELLAPOLLA,** | ) | |
| | ) | |
| **RESPONDENT.** | ) | |

**CLAIMANT'S OPPOSITION TO RESPONDENT'S MOTION TO STAY**

Claimant Rocco Guidicipietro (the "Claimant") opposes the Letter Motion to Stay Proceedings (the "Motion") of Respondent Jamie DellaPolla (the "Respondent") dated December 11, 2023, and requests that it be denied.

## I.    Introduction.

The Motion states that Respondent has filed a legal action ("Legal Action") in federal court that challenges the arbitration agreement in this case. The Legal Action[1] and the Motion are frivolous pleadings. Both are unsupported by the facts and the law, and the Motion was also filed in contravention of FINRA's Rules (which require a party to meet and confer and to describe such efforts in the motion[2]).

---

[1] Claimant's counsel obtained a public copy of the Legal Action via Pacer. A copy is attached as "Exhibit A." A copy was not provided with the Motion. To date, Respondent has not served Claimant. Of note, Respondent has not filed the draft Complaint that he sent to Claimant in March 2023.

[2] FINRA Code of Arbitration Procedure for Customer Disputes, Rule 12503(a).

The Panel should deny the Motion because (1) the parties' Arbitration Agreement delegates the initial question of arbitrability to the arbitrators; (2) Claimant's claims are arbitrable (as are Respondent's); and (3) Respondent has waived his objections to arbitrability by actively participating in this arbitration without objection.

## II.    Key Dates and Facts.

As this timeline shows, Respondent has participated extensively in these arbitration proceedings without asserting any objection to arbitrability prior to the Motion.

- March 10, 2023
    - Respondent sends a demand letter, attaching a Draft Complaint, to Mr. Guidicipietro and to his broker-dealer, Alexander Capital, L.P. ("Alexander").
- March 22, 2023
    - Claimant receives Respondent's demand letter.
- March 24, 2023
    - Counsel for Claimant contacts counsel for Respondent and requests that Respondent provide copies of the exhibits referenced in the Draft Complaint.
- April 2023
    - Mr. Guidicipietro and Alexander respond to the demand letter, deny the claims contained in the Draft Complaint, and asks Mr. DellaPolla to withdraw the allegations as asserted against them.
    - Mr. Guidicipietro reminds Mr. DellaPolla of the existence of the arbitration agreement contained in Mr. DellaPolla's new account paperwork.
- April 2023
    - Mr. Guidicipietro updates his license to reflect the allegations asserted by Mr. DellaPolla in accordance with FINRA Rules.
- May through July 2023
    - Mr. DellaPolla does not file the Draft Complaint or initiate any portion of the threatened legal proceeding against Mr. Guidicipietro.

- August 7, 2023
  - Mr. Guidicipietro files the Statement of Claim for this case (23-02187) and submits the required signed Uniform Submission Agreement ("USA").
- August 8, 2023
  - FINRA serves Mr. DellaPolla with the Statement of Claim.
  - *Respondent's Answer is due on or before September 27, 2023.* (*See* FINRA Rule 12503.)
- September 27, 2023
  - Respondent does not file his Answer.
- September 29, 2023
  - Claimant serves his First Request for Documents and Information ("First Request") on Respondent in accordance with Rule 12507 of the Code of Arbitration Procedure.
    - Respondent's response to the First Request was due on or before November 28, 2023. (*See* FINRA Rule 12507(b).)
- October 6, 2023
  - Respondent's counsel sends a letter to FINRA that includes the following statement:
    - "We represent the Respondent in the above-named arbitration. We write, with the approval of the Claimant, to request that this matter be transferred to New York. The broker and the activities at issue are Central to New York City as a location for this case."
  - Respondent's counsel also requests - over a week after the Answer is due - that the deadline for an Answer be "extended to November 5, 2023."
  - FINRA approves the request to transfer the case to New York.
  - No action is taken on the request to extend the deadline for an answer.
- October 11, 2023
  - FINRA sends a list of arbitrators for New York.
    - It had previously sent a list of arbitrators when the case was set for hearing in Florida.
- October 31, 2023
  - The last day for the Parties to submit rankings of arbitrators.
- November 5, 2023
  - Respondent files his Answer and Counterclaims.

3

- November 6, 2023
  - FINRA writes Respondent to inform him that his filing of his Answer and Counterclaims was deficient as he failed to pay the requisite filing fee and failed to sign the Uniform Submission Agreement.
    - The letter notes: "If payment is not received within 30 days from the time the party receives notice of the deficiency, the panel will proceed with the arbitration as though the deficient document had not been filed."
    - *Respondent's payment is due on or before December 6, 2023, if he wishes to maintain his counterclaims.*
- November 24, 2023
  - Claimant serves his Second Request for Documents and Information (with requests derived from Respondent's Answer) on Respondent.
- November 27, 2023
  - Claimant files his Answer to Respondent's Counterclaims.
  - Claimant makes his initial discovery production to Respondent in accordance with FINRA Rule 12506. The production is Bates-labeled Guidicipietro-DellaPolla-0000001 through Guidicipietro-DellaPolla-0001768, and also includes native format files (e.g., Excel spreadsheets).
  - Respondent does not make his initial discovery production, in violation of FINRA Rule 12506.
- November 28, 2023
  - Respondent's counsel acknowledges in writing the receipt of Claimant's initial discovery production.
  - Respondent downloads Claimant's production.

| NOV 28, 2023 | |
| --- | --- |
| 📁 | William Igbokwe downloaded a document 'Claimant's First Production.zip'. 3:03 pm |

- December 6, 2023
  - Respondent timely cures the deficiencies in the filing of his Answer and Counterclaims noted in FINRA's letter of November 6, 2023
    - Respondent files his signed Uniform Submission Agreement, dated December 5, 2023 ("Exhibit B").
    - Respondent uploads proof of payment for his counterclaims (twice) to the DR-Portal ("Exhibit C").

| Documents Sent by Another Party | 12/06/2023 | Payment online-1.pdf (12/06/2023) | O. Williams Igbokwe |
| --- | --- | --- | --- |
| Documents Sent by Another Party | 12/06/2023 | Payment online.pdf (12/06/2023) | O. Williams Igbokwe |

4

- ○ Respondent's counsel writes:
  - ■ Please be informed that Mr. DellaPolla issued payment in the amount of $1,600.00 as instructed to initiate the counterclaims asserted in his answer which was filed on November 5, 2023. The payment was made online through a wire transfer referencing the invoice number MTX431298. Thank you for your attention to this matter.
- December 7, 2023
  - ○ FINRA sends a copy of Respondent's signed USA to the Panel along with a cover letter (with a copy to counsel for the parties) ("Exhibit D").
  - ○ Claimant contacts Respondent about his overdue discovery productions. Respondent replies stating:
    - ■ "We are currently working through our clients document production. We should be able to get you our first production with the holiday schedule within 30 days. Thank you for your follow up." ("Exhibit E").
  - ○ Claimant replies reminding Respondent that his discovery productions are already overdue and asking that, at a minimum, each of the Exhibits referenced in the Draft Complaint sent by Respondent on March 10, 2023, be produced without delay.
- December 8, 2023
  - ○ Respondent files the Legal Action in the U.S. District Court for the Southern District of New York. Respondent does not notify Claimant of the filing.
- December 11, 2023
  - ○ Respondent files the Motion requesting a stay of this case.
    - ■ Respondent did not confer with Claimant before filing the Motion, as required by FINRA Rule 12503(a)(1).

5

### III.    Respondent has submitted this case to arbitration[3] and there are no grounds for him to change his mind.

   *A. Respondent signed a predispute arbitration agreement.*

Respondent signed a predispute arbitration agreement with Claimant as his registered representative. This agreement states that, among other things, "This Agreement contains a pre-dispute arbitration clause." The agreement continues by stating that:

- **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THEIR RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**

Respondent included a copy of the signed predispute arbitration agreement as an Exhibit to the Legal Action. (*See* Exhibit A).

   *B. Respondent filed an Answer and Asserted Counterclaims **in this case**.*

In Respondent's Answer, filed on November 5, 2023, he did not state any objection to proceeding in this forum. He also did not reference any issues concerning arbitrability as a defense or otherwise. (*See* Respondent's Statement of Answer and Counterclaims pp. 13-14 (asserting Affirmative Defenses)).

---

[3] By accepting this case, the Director determined that Claimant's expungement request is eligible for determination by the Panel. *See* FINRA Rule 12203 (providing that the Director *shall* decline the use of the FINRA arbitration forum if the Director determines that the expungement request is ineligible under Rule 12805).

On the contrary, Respondent presented his account of alleged facts, and specifically accused Mr. Guidicipietro of misconduct as a registered representative. He also complained about alleged investments and he made specific claims about Mr. Guidicipietro. For example, he stated that "ACLP [Alexander Capital, L.P.] and Mr. Guidicipietro accepted Mr. DellaPolla's transfer of $100,000 …," Statement of Claim at pp. 6-7.

Moreover, Claimant asserted counterclaims. (Statement of Claim at pp. 14-18). And he also requested relief from the Panel, to include actual or compensatory damages.

The fact that Claimant has denied Respondent's allegations does not negate that Respondent's claims concern alleged transactions between Respondent and Claimant. Specifically, Respondent complains about alleged investments that he claims were made with Claimant. Those claims are arbitrable in this forum and should proceed in this case.

Claimant submitted his Answer to the Counterclaims before Respondent filed the Legal Action.

    *C. Respondent signed a Uniform Submission Agreement and Submitted the document to FINRA.*

Rule 12100(dd) states that the term Submission Agreement means the FINRA Submission Agreement (or USA). The FINRA Submission Agreement is a document that parties must sign at the outset of an arbitration in which they agree to submit to arbitration under the Code.

In this case, Respondent signed and submitted an USA (again, before ever raising any objection to arbitrability or filing the Legal Action).

Respondent's USA states that the undersigned parties (which was Jamie DellaPolla), hereby submits the present matter in controversy, as set forth in his answer and all related counterclaims, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure. (Exhibit B, ¶ 1).

Underneath the line that states, "The parties hereto have signed and acknowledged the foregoing Submission Agreement," Mr. DellaPolla signed and dated the document. His counsel filed the USA to the DR-Portal, and FINRA then served a copy on the Panel with copies to the parties.

### D. Respondent paid the filing fee regarding his counterclaims.

On December 6, 2023, before asserting any objection to arbitrating this case and before filing the Legal Action, Respondent paid $1,600 to FINRA Dispute Resolution Services, Inc., as the filing fee for his counterclaims. Respondent's counsel submitted a letter via the DR Portal that confirmed the payment and referenced the relevant invoice. A copy of this letter is enclosed as Exhibit C.

### E. Respondent confirmed the Panel in the Initial Prehearing Conference.

On December 19, 2023, Respondent confirmed the Panel without objection. (*See* Initial Prehearing Conference Scheduling Order dated 12/19/2023, ¶ 5).

8

**IV.     Respondent's Motion is Frivolous and he has already consented to arbitrate this case, including the question of arbitrability.**

Respondent's Motion is frivolous for a number of reasons. Primarily, the Motion is frivolous because there is no basis to the Legal Action that seeks to enjoin this arbitration on the assertion that the arbitration agreement is overbroad and unenforceable.

   *A. Whether Claimant's claims here are subject to arbitration is a question for this Panel.*

Pursuant to the terms of the arbitration agreement, the parties clearly and unmistakably agreed to have the issue of arbitrability resolved by a FINRA arbitration panel.

Section 14 of the Customer Agreement entered into by the Parties states:

> **14. ARBITRATION**. I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN ME, MY INTRODUCING BROKER AND/OR RBC CM, OR ANY OF MY INTRODUCING BROKER'S OR RBC CM'S AFFILIATES, EMPLOYEES OR AGENTS, CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN ME, MY INTRODUCING BROKER AND/OR RBC CM PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION  . . . BEFORE AN ARBITRATION PANEL APPOINTED BY THE FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA") AND IN ACCORDANCE WITH THE RULES OF FINRA.

(Exhibit F at p. 7 of 13).

The United States Supreme Court has repeatedly recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002); *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). This line of cases reflects the principle that arbitration is a matter of contract. *Rent-A-Center*, 561 U.S. at 69; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184 (2d Cir. 2019) ("Just as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract."); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (noting that parties may "agree to have arbitrators decide threshold questions of arbitrability" as a matter of contract). Despite a general presumption that courts decide issues of arbitrability, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (finding that in the absence of an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement "is typically an issue for judicial determination").

Moreover, when the parties have agreed to submit the question of arbitrability to an arbitrator, the courts must respect and enforce that contractual agreement. *Schein*, 139 S .Ct. at 530. ("When the parties' contract delegates the arbitrability

question to an arbitrator, a court may not override the contract . . .”). Thus, where a valid agreement exists, and the agreement delegates the arbitrability issue to an arbitrator, the court may not decide the arbitrability issue. *Id.*

Consistent with these principles, the Second Circuit in *Bucsek* recently recognized that it is rare that an arbitration agreement will directly state whether the arbitrator or the court is to decide any given issue of arbitrability. *Bucsek*, 919 F.3d at 191. In the absence of language that directly addresses the issue, it is therefore necessary to “examine other provisions of the agreement to interpret the contractual intent of the parties on that issue.” *Id.* at 194. *Bucsek* held that clear and unmistakable evidence of an intent to arbitrate can be inferred from, inter alia, the following provisions in a contract: (i) broad language expressing an intention to arbitrate all aspects of all disputes; (ii) the incorporation by reference of arbitration rules that empower an arbitrator to decide issues of arbitrability; and (iii) the waiver of the right to seek remedies in court. *See id.* at 190-92.

Here, the arbitration provision manifests the signatories’ intent that a FINRA arbitration panel, rather than a court, is to decide whether Claimant can enforce the arbitration provision. First, this intent is evidenced by the broad scope of the arbitration provision, which states that “all controversies that may arise between me, my introducing broker, and/or RBC CM, or any of my introducing broker’s or RBC CM’s affiliates, employees, or agents concerning any transaction(s), or the construction, performance, or breach of this or any other agreement between me, my introducing broker, and/or RBC CM pertaining to securities and other property . . . . shall be determined by arbitration.” (Ex. F at p. 7 of 13.)

11

The arbitration provision's referral of "all controversies," including those concerning the "construction" of the agreement to arbitration generally reflects a broad grant of power to the arbitrators to assess arbitrability. *See Rent-A-Ctr.,* 561 U.S. at 66, 69 (finding that an arbitration agreement giving the arbitrators "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this contract" empowered the arbitrators to resolve arbitrability of an unconscionability claim); *Benihana, Inc. v. Benihana of Tokyo, LLC,* 784 F.3d 887, 898 (2d Cir. 2015) (finding agreement that required arbitration of "any and all" disputes between the parties relating to their agreement to constitute clear and unmistakable evidence of parties' intent for arbitrator to decide arbitrability); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) ("[E]ven absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) (finding that a contractual provision that "any and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement ... shall be determined by arbitration" evidenced "the parties' intent to arbitrate all issues, including arbitrability."); *Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 286 (S.D.N.Y. 2019) (finding that agreement to refer to arbitration "all controversies" and "any related matter" to reflect a broad grant of power to the arbitrators to assess arbitrability).

Second, other provisions in the Customer Agreement reinforce the conclusion that the signatories intended for the arbitrator to determine the question of arbitrability. The signatories agreed they would be "giving up the right to sue each other in

12

court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in a claim is filed." (Ex. F at p. 6 of 13, Sec. 13.) Language in a contract waiving the signatories' right to sue each other in court has been routinely found to provide evidence of an intent to delegate arbitrability issues to the arbitrator. *See, e.g., Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396-98 (2d Cir. 2018) (finding "an intent to delegate to an arbitrator any questions of arbitrability," where arbitration clause stated that parties were "giving up the right to sue Wells Fargo Advisors ... in court concerning matters related to or arising from your employment"); *Bybyk*, 81 F.3d at 1199 ("Several provisions in the Agreement evidence the parties' intent to arbitrate all issues, including arbitration: ... '[T]he parties are waiving their right to seek remedies in court.'"); *Citadel Servicing Corp.*, 431 F. Supp. 3d at 288 (same). And third, the Customer Agreement explicitly incorporates the FINRA Rules. The arbitration provision states that "any arbitration under this Agreement shall be conducted . . . in accordance with the Rules of FINRA." (Ex. F at p. 7 of 13, Sec. 14.)

As relevant here, FINRA Rule 12409 states, "The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." Thus, the FINRA Rules empower an arbitrator to decide issues of arbitrability. *See Alliance Bernstein Inv. Research and Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006) (holding that NASD Rule 10324, which is substantially identical to FINRA Rule 12409, evidenced a clear and unmistakable intention in an arbitration agreement that incorporated the NASD Code to have the arbitrators decide arbitrability of a question that turned on interpretation of the Code); *see also Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (finding "the incorporation of the AAA Rules into a contract requiring

13

arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability"). When "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also, e.g., Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) (holding incorporation of UNCITRAL Arbitration Rules, which empower the arbitrator to decide issues of arbitrability, constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Shaw Grp.*, 322 F.3d at 122 (holding reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator).

To be clear, the incorporation of FINRA Rules is "not necessarily sufficient to support a clear and unmistakable inference of intent to arbitrate arbitrability," on its own. *See Bucsek*, 919 F.3d at 195 (finding that because "Rule 13413's support for an inference of contractual intent to confer arbitrability on the arbitrators is only moderate," the courts are required "to examine other provisions of the agreement to interpret the contractual intent of the parties on that issue.") But, incorporation of the FINRA Rules in this case merely provides further support for the conclusion, derived from the plain text of the arbitration provision, that arbitrability questions are delegated to the arbitrator." *Citadel Servicing Corp.*, 431 F. Supp. 3d at 289.

14

## B.    Respondent has waived his right to object to arbitration

Prior to *and subsequent to* filing the Motion, the Respondent actively participated in this arbitration, waiving any argument that this Panel lacked the authority to arbitrate this dispute. If a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, he may be found to have waived his right to object to the arbitration. *Opals On Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 368 (2d Cir. 2003); *see also Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639-40 (S.D.N.Y. 1990) (finding waiver where a party participated in the proceedings, lest the party could "participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration"). "Participating in the arbitration hearings in order to resolve the question of arbitrability itself" does not constitute waiver of a party's objection to the arbitration. *Opals on Ice Lingerie*, 320 F.3d at 369; *see also First Options*, 514 U.S. at 946 ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue."). Failing to maintain an objection to the arbitrator's jurisdiction throughout arbitration, however, and participating beyond disputing arbitrability, such as engaging in discovery, testifying, and submitting papers on the merits of the underlying dispute, may evidence waiver. *Compare Merrill Lynch & Co. v. Optibase, Ltd.*, No. 03 Civ. 4191, 2003 U.S. Dist. LEXIS 10922, 2003 WL 21507322, at *3 (S.D.N.Y. June 30, 2003) (finding a waiver when the party "affirmatively sought adjudication of the merits of [the] claims in the arbitral forum and pursued discovery in that forum relating to [those claims]"), and *Walter H. Jones v. Watts Inv. Co.*, No. 99 Civ. 10590, 2000 U.S. Dist. LEXIS 5864, 2000 WL 546490, at *4 (S.D.N.Y. May 3, 2000) (finding waiver when the party "addressed the merits of [the] fraud claim in the arbitration proceedings and waited

until the arbitrator decided the pending motion ... before seeking a stay of arbitration"), *with Dedon GmbH v. Janus et Cie*, No. 10 Civ. 04541, 2010 U.S. Dist. LEXIS 112131, 2010 WL 4227309, at *7 (S.D.N.Y. Oct. 19, 2010) (finding no waiver when the party contested arbitrability "[f]rom its first submission ... to its last," although the arbitration never proceeded to address the merits of the dispute).

In October, Respondent's counsel conferred with Claimant's counsel and both consented to move the case from Florida (where it was originally assigned by FINRA) to New York. At no time during this discussion did Respondent express an issue about arbitrability. On October 6, Respondent filed, without objection to arbitrability, the Parties' joint request for a change of venue. In that same filing Respondent, acting on his own and without objecting to the arbitrability of the case, asked that he be granted, over Claimant's objection, an "extension" of the already-passed deadline to Answer. Respondent's filing of October 6 was the first, but far from the last, time that he actively availed himself of this forum without objection to its jurisdiction over the claims.

Respondent filed an Answer *and* Counterclaims on November 5, 2023. He did not object to arbitrating the case in his Answer. In addition, he did not file any document that contained an objection to this forum or any statement about being unwilling to proceed in arbitration in this case after being served with the Statement of Claim and prior to submitting his Answer. At the same time he affirmatively submitted counterclaims to this Panel for determination in the course

16

of arbitration. These voluntarily-submitted Counterclaims encompassed the interactions Respondent now asserts are not arbitrable.[4]

On November 6, 2023, FINRA notified Respondent that because Respondent's Answer was filed without a USA and because Respondent had failed to pay the requisite fee for his counterclaims, the Answer was deficient. FINRA further informed Respondent that, if those deficiencies were not corrected within 30 days of the letter, which is to say by December 6, 2023, it would treat the Answer and Counterclaim as if they had not been filed. Respondent, at that point in time, had he truly objected to the arbitrability of these claims could have, effectively, undone his submission of these claims to the Panel by simply refusing to correct these deficiencies.

Instead, on December 6, 2023, Respondent filed a signed Uniform Submission Agreement ("USA"). The first paragraph of that document reads:

> The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA ByLaws, Rules, and Code of Arbitration Procedure.

Exhibit B, ¶ 1.

This is not ambiguous language. Respondent agreed to arbitrate the present matter in controversy (this case) in this forum and in accordance with the FINRA

---

[4] Having asserted that these claims and the underlying facts are arbitrable, Respondent ought to be judicially estopped from asserting the contrary.

ByLaws, Rules, and Code of Arbitration Procedure. And this expressly included the submission of his Answer and Counterclaims to arbitration (which he filed before submitting the USA).

On December 6, 2023, Respondent also uploaded (twice) a letter stating that he had wired $1,600 to FINRA in payment for the filing fees associated with the counterclaims he asserted on November 5, 2023. (Exhibit C).

In sending the December 6th wire and filing the signed USA, Respondent cured the deficiencies raised by FINRA on November 5th, and actively chose for at least the third time to submit to the jurisdiction of this Panel and to seek to arbitrate the underlying dispute.

Respondent took all of these actions _**prior**_ to filing the Legal Action on December 9, 2023.

Moreover, after filing the Legal Action, Respondent continued to actively participate in this arbitration. Specifically, on December 19, 2023, Respondent confirmed the Panel in this case during the initial pre-hearing conference. It was only after Respondent confirmed the Panel that he raised an issue about arbitrability.

Respondent by, among other things, filing an Answer and Counterclaims, submitting a USA, and paying the fees for his counterclaims, has consented to submitting the present controversy to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure and has waived his right to object. As such, the Motion should be denied.

18

**V. FINRA Rules require the Parties to arbitrate.**

The Code requires this case to be arbitrated. Among other things, when Respondent signed the USA, he agreed to abide by the FINRA By-Laws, Rules, and Code of Arbitration Procedure. (Exhibit B, USA, ¶ 1).

In addition, Respondent also affirmed that either he or his representative read the procedure and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules. (Id., ¶ 2). Respondent is represented by counsel.

Under Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes, parties must arbitrate a dispute under the Code if: 1) required by a written agreement or requested by a customer; 2) the dispute is between a customer and a member or associated person of a member; and 3) the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance activities of a member that is also an insurance company.

In this case, there is a written agreement to arbitrate signed by Respondent and Claimant. (Exhibit F).[5] In addition, Respondent signed a USA, submitting this case to arbitration in this forum. (Exhibit B).

---

[5] There is no dispute that Respondent and Claimant signed a written agreement to arbitrate. In fact, Respondent included a copy of the signed arbitration agreement as an Exhibit to the Legal Action. (*See* Exhibit A.)

In cases where there is an arbitration clause, such as in the instant dispute, the U.S. Supreme Court has held that there is a presumption of arbitrability unless it may be said with positive assurance that the arbitration is not susceptible of an interpretation that covers the asserted dispute. *AT&T Techs. v. Communs. Workers of Am.,* 475 U.S. 643, 656 (1986). Here, the disputes at issue concern transactions that Respondent alleges Claimant participated in through his role as a registered representative and with his broker-dealer (Alexander). The claims at issue do not cover some unrelated conduct (such as a car accident between Claimant and Respondent). Instead, Claimant's request for relief is directly related to controversies that arose between Claimant and Respondent concerning alleged transactions, and Respondent's counterclaims concern alleged transactions (and investments) that he contends were made with Claimant's involvement as a registered representative of Alexander, his broker-dealer. These are clearly within the scope of the arbitration clause.

## VI.  Respondent's Legal Action contains material deficiencies.

In the Legal Action, Respondent misrepresents the arbitration agreement and he omits critically important information about this case.

With respect to the arbitration agreement, Respondent states that the arbitration agreement is between Mr. DellaPolla and RBC Capital Markets ("RBC"). RBC us the clearing firm for Alexander (the broker-dealer with whom Mr. Guidicipietro was (and is) registered). Respondent states that RBC is not a party to the arbitration. That is true, but the arbitration agreement is not only between Mr. DellaPolla and RBC. It also includes the introducing broker (which is Alexander) and the introducing broker's employees or agents (which includes Mr.

Guidicipietro). Respondent even highlights the text that says this in ¶ 10 of the Legal Action.

Claimant, as an agent of the introducing broker and signatory to the Agreement, is bound by and entitled to enforce the arbitration provision as an intended beneficiary under the express terms of the contract. *See Spear, Leeds & Kellogg v. Central Life Assurance Co., 85 F.3d 21, 26-27 (2d Cir. 1996)* (finding third-party beneficiary status from language providing that "any controversy between a member . . . and any other person arising out of the business of such member . . . shall at the insistence of any such party be submitted for arbitration"); *St. Paul Fire & Marine Ins. Co. v. API, Inc.*, No. A04-204, 2004 Minn. App. LEXIS 1107, at *10-11 (Ct. App. Sep. 28, 2004) ("A nonsignatory third-party beneficiary to a contract may, in some circumstances, enforce an arbitration clause, 'if the contracting parties intended the third party to directly benefit from the contract.'"); *see also Citadel Servicing Corp.*, 431 F. Supp. 3d at 286-87 ("Whether Castle is an 'agent' of StoneCastle within the meaning of the Placement Agreement (and therefore entitled to arbitrate against Citadel) is precisely a 'related matter' that 'shall be determined by [FINRA] arbitration.'").

In addition, Respondent's Statement of Facts ended with a statement that Claimant filed a Statement of Claim, initiating an action for expungement and defamation. (Legal Action, ¶ 14). Respondent failed to inform the Court that Respondent himself, among other things, filed an Answer and Counterclaims, signed and submitted a USA, and paid the fees related to his counterclaims. Respondent took all of these actions before he filed the Legal Action, yet failed to disclose these material facts to the Court. The Court is highly unlikely to view these material omissions favorably.

21

Furthermore, the Legal Action is limited in the relief it requests. Respondent did not file the Draft Complaint. Instead, he's only trying to stop this arbitration.

## VII.  The Panel should deny the Motion.

For the foregoing reasons, the Panel should deny the Motion. There is no factual or legal support for the Motion or the Legal Action. The arbitration should proceed without further delay.

Respectfully submitted this 21st day of December 2023.

_s/ Scott Holcomb_
Scott Holcomb
Holcomb + Ward, LLP
3455 Peachtree Rd NE, Suite 500
Atlanta, GA 30326
scott@holcombward.com
(404) 445-5205 (office)
(404) 393-1554 (fax)

## CERTIFICATE OF SERVICE

I certify that *Claimant's Opposition to Respondent's Motion to Stay* was served on FINRA and Claimant via the DR Portal on December 21, 2023.

*s/ Scott Holcomb*
Scott Holcomb
Holcomb + Ward, LLP
3455 Peachtree Rd NE, Suite 500
Atlanta, GA 30326
scott@holcombward.com
(404) 445-5205 (office)
(404) 393-1554 (fax)
